UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOE'S LOBSTER MART, INC. and
JOSEPH A. VAUDO,
    Plaintiffs,

CIVIL ACTION
NO. 05-11256- GAO

v.

FRANCIS DONOVAN, DISTRICT ENGINEER,
U.S. ARMY CORPS OF ENGINEERS, NEW
ENGLAND DISTRICT, COL. THOMAS L. KONING,
U.S. ARMY CORPS OF ENGINEERS,
NEW ENGLAND DISTRICT, LTG. CARL A. STROCK,
CHIEF OF ENGINEERS & COMMANDER,
U.S. ARMY CORPS OF ENGINEERS,
HON. FRANCIS J. HARVEY, SECRETARY OF THE ARMY,
and the UNITED STATES OF AMERICA,
    Defendants.

### AFFIDAVIT OF JOSEPH A.VAUDO

I, Joseph A. Vaudo, under oath, hereby depose and state as follows:

1. I am the owner of Joe's Lobster Mart, Inc., which has operated and done business at the sandwich Bulkhead for 32 years, and for the past twenty years has leased Lot 2 from the U.S. Army Corps of Engineers ["U.S.A.C.E."].

2. My business consists of the retail and wholesale purchase and sale of fish, shellfish and seafood products, and fish processing plant, with local fisherman selling their catch to me, unloading at the bulkhead.

3. Although in 1980 there were three fish processing plants at the bulkhead, today, I am the only surviving plant – one having gone out of business, the other moved to New Bedford.

4. My gross sales are in the range of $3 to $4 million per year.

5. There are no other commercial ports in the Town of Sandwich, and there are no other fish processing plants within the Town of Sandwich.

6. Given zoning constrictions, if I remove my building, which belongs to me, no other lessee would be able to construct <u>any</u> structure on the

site, because the lot size, at some 16,000 square feet, does not meet the current zoning requirements of at least 20,000 square feet of lot area.

7. No one has approached me about purchasing my building, equipment, licenses, etc., since the Notice of Availability was published the U.S.A.C.E.

8. I have attempted, since early this year (January), to meet with the District Engineer, Mr. Francis Donovan, to re-negotiate my lease for Lot 2, to no avail.

9. I sent a letter in April 2005, to Mr. Donovan, a copy of which is attached, to which no response was ever received.

10. In 2000, the lease was awarded to me on a non-competitive basis, and, despite the fact that the fair market rental value of the property was only some $17,000, I agreed to continue to pay nearly $29,000 per year for the lease of Lot 2, a substantial benefit to the U.S.A.C.E.

11. The fact that the 2000 lease was awarded noncompetitively was in acknowledgment of the fact that, unless I continued to lease the property, no other lessee would be allowed to build any structures on Lot 2, due to zoning restrictions – and my lease requires that I remove all structures, because they belong to me.

12. If I am unable to continue business in this location, my business is essentially destroyed.

13. There is no other place within the Town of Sandwich with commercial off-loading of fish catches available, and it is unlikely that I will be able to locate a similar location anywhere on Cape Cod, meaning I would have to locate off-Cape.

14. My customers are local people, who view my store as an institution, and in fact it is the only fish market in the Town of Sandwich.

15. Given the zoning restrictions, unless someone were to purchase my building, equipment, etc., the only use that could be made of Lot 2 would be the off-loading of fish into commercially permitted trucks to take the off-loaded catch to other fish processing plants located outside the Town of Sandwich.

16. If the U.S.A.C.E. wishes to make lots available for this purpose, there are two other lots on either side of me, Lots 1 and 3, which are available for this purpose, and, if some other person is interested in doing this, U.S.A.C.E. should offer one of those lots to such person(s).

17. In reconstructing the Sandwich Bulkhead in 1986, the main purpose for choosing the method of construction which was undertaken was to ensure the viability of the fishing fleet in Sandwich and the fish processing plants located on the bulkhead, given the substantial negative impact the loss of the same would have on the local and regional socio-economy, as set forth in pp. 19-20 of the Reconnaissance Report.

18. My business would be devastated if I cannot continue in business at this location.

19. The non-competitive award of the lease of Lot 2 to me in 2000 sets a precedent that in fact it is not practicable, as set forth in 33 C.F.R. 211.8(a) to use a competitive bidding process for the lease of this lot, primarily because of the zoning considerations.

20. The only way that this would make sense is of some person(s) had an agreement with me to purchase my building, equipment, licenses, etc (if assignable), and no one has ever approached me regarding the same.

21. After trying to schedule a meeting with Mr. Donovan from January 2005 onward, I finally had a meeting scheduled for May 23, 2005, however, on May 21, 2005, I received the Notice of Availability of Bid for Lot 2, and it became clear that any such meeting would be fruitless, since the U.S.A.C.E. had already determined that it wished to place the lot out for competitive bid, so I cancelled that meeting.

22. To date, we have had no response to my attorney's letter of June 6, 2005, and the bid deadline of June 21, 2005, is fast approaching.

23. It makes absolutely no sense to place Lot 2 out for competitive bid and it is impracticable, as set forth in 33 C.F.R. 211.8(a), and the U.S.A.C.E. should instead grant me a non-competitive lease at fair market rental value.

24. If the U.S.A.C.E. wishes to lease Lots 1 and 3 to others, it remains free to do so, subject to the local zoning limitations (and compliance with local zoning limitations is a condition of the Invitation to Bid).

25. There is no need to jeopardize my 32-year business, as the sole remaining fish processing plant in the Town of Sandwich, particularly at a time when the fishing industry continues to decline, and with the recent outbreak of red tide, which is devastating the local shellfishing industry.

26. In or about September 2004, Mr. Donovan inspected the bulkhead, to ensure that it was functioning correctly, and, evidently it was, and he commented to me that I "had another 25 years" at my location.

27. Finally, the Invitation to Bid is defective, deceptive and confusing as it claims of the first page that the Bids are due by 2:00 p.m. Tuesday, June 21, 2005, yet on page 8, it states they are due by 2:00 p.m. June 20, 2005.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 16TH DAY OF JUNE 2005.

_____
Joseph A. Vaudo, President
Joe's Lobster Mart, Inc.

Joseph Vaudo
Joe's Lobster & Fish Mart
Cape Cod Canal
Sandwich, MA  02563

April 11, 2005

Real Estate Division
Corps of Engineers

Re: Cape Cod Canal, MA – Lease No.  DACW 33-1-00-090

Dear Mr. Donovan:

As you know, my 5-year lease (No.  DACW 33-1-00-090) will expire on July 14, 2005.  Subsequently, the ability of Joe's Lobster & Fish Mart to continue to handle a substantial majority of commercial fish landings in the port of Sandwich is entirely dependent on our securing an extension of that lease.

The loss of this lease, and consequently this business of 33 years -- would constitute a devastating blow to myself, the 10 year-round and 20 seasonal employees, the commercial fishermen who rely on us as trusted buyers and handlers, and the town of Sandwich, which benefits both directly and indirectly from the $3.5 to $4 million worth of fish and shellfish we buy annually.

These considerations were at the heart of the Army Corps's cost-benefit analysis of the need for a major investment to rehabilitate the Sandwich Bulkhead 25 years ago (Reconnaissance Report – October, 1980).  That Report found a compelling justification for that expenditure, over a projected life of 50 years -- in large measure because of the value of fish landings (both immediate and "secondary") to the area.

As that Reconnaissance Report so clearly recognized, the decision of whether or not to renew this lease carries with it significant consequences for this business and for this region.  For that reason, it is with a sense of urgency, that I request a meeting with the appropriate Army Corps officials before such an important determination is made.

I would be happy to meet at a time and place of your convenience, at which time I would be accompanied by Mark Forest, representing Congressman Delahunt, and by former Congressman Gerry Studds, whose counsel I have sought on this matter.

Your assistance is greatly appreciated.

Sincerely,

[signature]



**DEPARTMENT OF THE ARMY**
NEW ENGLAND DISTRICT, CORPS OF ENGINEERS
696 VIRGINIA ROAD
CONCORD, MASSACHUSETTS 01742-2751

REPLY TO
ATTENTION OF

April 7, 2000

Real Estate Division
Conveyancing Branch


Mr. Joe Vaudo
Joe's Fish and Lobster Mart
P. O. Box 248
Sandwich, Massachusetts 02563

                    Re: Cape Cod Canal, MA--Lease No. DACW33-1-90-37

Dear Mr. Vaudo:

    Your lease (No. DACW33-1-90-37) will expire on July 14, 2000. We are willing to noncompetitively extend your right to use Lot 2 for an additional five-year term by issuing a new lease in out latest approved format. We have decided that it is in the best interest of the Government to withdraw Lot Nos. 1 and 3 from the area that will be covered by a lease.

    We have ordered a current appraisal for Lot no. 2 only. As soon as the appraisal is completed we will send you a draft of the new lease.

    If you have questions regarding this matter, please contact Donna M. Russell of this office at 978-318-8184.

                                      Sincerely,

                                      Joseph M. Redlinger
                                      Chief, Real Estate Division